UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:25-CR-26 (KAD) |
| vs. | : | |
| | : | November 26, 2025 |
| VINCENZO MINUTOLO | : | |

## SENTENCING MEMORANDUM

Vincenzo Minutolo respectfully submits this memorandum in anticipation of his sentencing hearing on December 10, 2025. The defense respectfully requests that the Court impose a non-Guidelines prison sentence of 12 months and one day.

### I.   Procedural Background

The offense conduct consists of unemployment insurance fraud that occurred from March 2020 until April 2021, and Paycheck Protection Program ("PPP") fraud that occurred from March 2021 until September 2021. *See* PSR ¶¶ 16, 28, 32. On February 28, 2025, Mr. Minutolo waived indictment and pled guilty to an information charging him with one count of wire fraud regarding PPP loans, and one count of wire fraud regarding unemployment insurance. *See* ECF No. 9.

Sentencing is currently scheduled for December 10, 2025. *See* ECF Nos. 28 & 29.

As of the time of sentencing, Mr. Minutolo will have been under the supervision of the U.S. Probation Office for approximately 9 ½ months. During this time, the only reported non-compliance was reporting police contact to the U.S. Probation Office after seven days instead of within three days. *See* ECF No. 20 at 2.

Mr. Minutolo also has unrelated state criminal matters pending in GA 1 in Stamford and GA 9 in Middletown, each related to alleged conduct on December 23, 2024. *See* PSR ¶¶ 58–59. Mr. Minutolo's next court appearance in Middletown is scheduled for December 12, 2025, and his

next court appearance in Stamford is scheduled for January 15, 2026. *See ibid.* Undersigned counsel has conferred with Mr. Minutolo's attorney in the Middletown case, who represents that these charges will be marked *nolle prosequi* at the next hearing on December 12, 2025.

Regarding the Stamford case, Mr. Minutolo maintains his innocence and hopes for an outcome similar to the anticipated outcome in Middletown. To facilitate the resolution of his Stamford case prior to the commencement of any term of imprisonment in this federal case, Mr. Minutolo anticipates requesting a federal self-surrender date on or after January 22, 2026, which is 43 days after his anticipated federal sentencing date of December 10, 2025. Should the Stamford charges not fully resolve on January 15, 2026, undersigned counsel would consider filing a motion with this Court to postpone Mr. Minutolo's self-surrender date, with the understanding that the Court might deny such a motion.

Mr. Minutolo is 39 years old and has no prior convictions.

## II.    The History and Personal Characteristics of Vincenzo Minutolo

Although 39 years old, Vincenzo Minutolo has failed to launch. He has not checked off many of the milestones that many of his peers have achieved. He has not earned a college degree, married, had children, or lived independently from his parents. *See, e.g.*, PSR ¶¶ 64, 68, 81. Mr. Minutolo has not achieved financial independence. He was raised under "modest economic circumstances" (*see id.* ¶ 64) and has thus far been unable to raise himself or his family from those circumstances (*see id.* ¶ 97). Typical milestones such as college graduation, professional or career attainment, owning his own home, authentic friendships with other males, and promising romantic relationships, are simply not part of Mr. Minutolo's current world.

Because male dominance and success in finance, dating, mating, and marriage are often the metric by which others (and individual males themselves) evaluate status, the long-term effects of

2

chronic deficits in these areas are profound. Mr. Minutolo has found himself shut out of the traditional pathways to educational attainment, professional development, and lifetime partnership. Without a path to success in one or more of these areas, Mr. Minutolo, like a growing number of young men, views himself as a failure.

As a Millennial, Mr. Minutolo is of a generation that has suffered significant economic disruption since starting their working lives, with many facing high levels of unemployment and debt in the wake of the Great Recession and the COVID-19 recession. *See generally, e.g.*, Julian Mark, *'Unluckiest Generation' Falters in Boomer-Dominated Market For Homes*, WASH. POST, Aug. 12, 2023, *available at* https://www.washingtonpost.com/business/2023/08/12/millennial-home-buyers/ (last accessed Nov. 26, 2025); Danielle Kurtzleben, *Here We Go Again: Millennials Are Staring At Yet Another Recession*, NPR, June 8, 2020, *available at* https://www.npr.org/2020/06/08/871042916/d-j-vu-for-millennials-staring-at-the-2nd-recession-of-their-adult-lives (last accessed Nov. 26, 2025); Catherine Baab-Mugira, *Failure To Launch: Why So Many American Millennials Feel Adulthood Is a Lie*, NBC NEWS, July, 8, 2018, *available at* https://www.nbcnews.com/think/opinion/failure-launch-why-so-many-millennials-feel-adulthood-lie-ncna889466 (last accessed Nov. 26, 2025). Mr. Minutolo was 21 years old at the onset of the Great Recession in late 2007, and 33 years old at the onset of the COVID-19 recession in early 2020.

Mr. Minutolo's adult life has been characterized by constant debt, failed employment or entrepreneurial ventures, failed romantic relationships that did not result in cohabitation or offspring, and a complete inability to achieve or maintain meaningful independence (financial or otherwise) from his parents.

This is necessary context and a partial explanation for Mr. Minutolo's inexcusable decision to fraudulently obtain $145,831 in PPP loans and $98,781 in unemployment insurance proceeds during

the COVID-19 pandemic, depriving fellow taxpayers and citizens of public funds at a moment of great instability and hardship. Mr. Minutolo, who has long dreamed of financial independence and aspired to establish a successful business of his own, used this money largely to shore up failed business ventures, including his audio production company, City Sounds Production. Some of the proceeds of the crime were also shared with family and friends who benefitted from the fraud but will not share in the punishment. *See generally* PSR ¶ 66 (Mr. Minutolo's sister described him as "someone who gives all he can" and "a good person to have on your side") & *id.* ¶ 77 (Mr. Minutolo described himself as "too generous" because he "does not know when to say no").

Mr. Minutolo will live with the consequences of his criminal conduct for the rest of his life. In addition to the thousands of collateral consequences of a federal felony consequences, Mr. Minutolo expects that the Court will sentence him to a term of imprisonment.

Since his arrest, Mr. Minutolo has taken concrete steps to improve his financial situation and to establish an educational foundation to improve his long-term prospects. Since July 9, 2025, Mr. Minutolo has worked as a veterinary assistant at Pet Town Vet Clinic in Newtown. *See id.* ¶ 84. Mr. Minutolo is also enrolled in Penn Foster's Veterinary Technician Program, an online accredited associate degree program. *See id.* ¶ 78. He aspires to a career in the veterinary field, reflecting his lifelong passion for caring for animals. *See id.* ¶ 77. Mr. Minutolo also continues to donate his time and talents at City Wide Church in Bridgeport, where he has been an invaluable volunteer for more than a decade. *See id.* ¶ 92.

## III.    The Offense Conduct

From March 2020 until April 2021, Mr. Minutolo collected $98,781 in unemployment insurance claims through materially false representations. *See id.* ¶¶ 28, 32. From March 2021 until September 2021, Mr. Minutolo obtained $145,831 in PPP loans based on materially false

representations. *See id.* ¶¶ 16, 32. Mr. Minutolo has agreed to pay restitution in the amount of $244,612, including $145,831 to the U.S. Small Business Administration and $98,781 to the Connecticut Department of Labor. *See id.* ¶ 120. Although the actual loss is under $250,000, the intended loss including monies that were clawed back is $290,765. *See id.* ¶¶ 32, 109, 120. But for this $40,000 difference, Mr. Minutolo's Guidelines imprisonment range would be 15 to 21 months, instead of 21 to 27 months. *Compare* U.S.S.G. § 2B1.1(b)(1)(G) (12-level increase for loss amount between $250,000 and $550,000), *with* U.S.S.G. § 2B1.1(b)(1)(F) (10-level increase for less amount between $150,000 and $250,000).

## IV. Argument

Vincenzo Minutolo respectfully submits that a non-Guidelines prison sentence of 12 months and one day is sufficient to meet the purposes of sentencing. There are numerous bases for a downward variance under the Guidelines, including Mr. Minutolo's lack of any criminal history; the principle of incremental punishment, as Mr. Minutolo has never served a period of imprisonment; Mr. Minutolo's full compliance and significant rehabilitative efforts while on presentencing supervision, including ceasing all entrepreneurial activities, obtaining and maintaining lawful employment, and enrolling in an associate degree program; and the amount of time since the offense conduct, which concluded more than four years ago.

According to the U.S. Sentencing Commission's JSIN database, the average and median sentences for U.S.S.G. § 2B1.1 defendants with Mr. Minutolo's criminal history category and total offense level nationwide over the last five fiscal years are 13 months and 12 months in prison. *See* PSR ¶ 104.

### A. The Guideline range in this case provides little useful advice.

In determining an appropriate sentence, the sentencing court must apply the "parsimony

5

clause" set forth in 18 U.S.C. § 3553(a), which provides that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The Court of Appeals explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (Walker, J.), that if the sentencing court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. *See id.* at 142 (stating that where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

While the Court is required to consider the range of penalties suggested by the Sentencing Guidelines in determining the appropriate sentence in a given case, that range does not bind the Court. *See United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) (Newman, J.). The Supreme Court has repeatedly reminded sentencing courts that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (emphasis in original); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (Breyer, J.) (emphasizing that the only "presumption of reasonableness" that applies to a Guidelines sentence is "an *appellate* court presumption," not applicable in the initial sentencing analysis conducted by the District Court) (emphasis in original). Thus, while the Court must consider the recommendations of the advisory Guidelines, the Court may not presume that those recommendations are reasonable. Instead, the Court must treat the recommended Guidelines sentence as only one among numerous factors.

For good reason, courts generally pay less attention to the Guidelines in fraud cases. While the amount of "loss" is the primary determinant of the offense level for fraud offenders, loss is a highly imperfect measure of the seriousness of an offense. *See United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (Rakoff, J.) ("By making a Guidelines sentence turn, for all practical purposes,

6

on this single factor [the amount of monetary loss or gain occasioned by the offense], the Sentencing Commission effectively ignored the statutory requirement that federal sentencing take many factors into account, *see* 18 U.S.C. § 3553(a), and by contrast, effectively guaranteed that many such sentences would be irrational on their face."); *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) (Rakoff, J.) (criticizing "the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss" without any explanation of "why it is appropriate to accord such huge weight to [this] factor[ ]"); Stewart Bishop, *Sentencing Commission Plans to Reassess Fraud Guidelines*, Law360, Aug. 7, 2025, https://www.law360.com/articles/2374801/sentencing-commission-plans-to-reassess-fraud-guidelines (last accessed Nov. 26, 2025) ("The U.S. Sentencing Commission on Wednesday said it will consider potential reforms to the federal sentencing guidelines for fraud offenses, including the outsized role of loss calculation in sentencing, one of several priorities the agency has marked for closer examination.").

In his concurrence in *United States v. Corsey*, 723 F.3d 366, 377–78 (2d Cir. 2013), Judge Underhill wrote that "[i]n my view, the loss guideline is fundamentally flawed . . . . [t]he widespread perception that the loss guideline is broken leaves district judges without meaningful guidance . . . ." Courts and commentators alike have frequently expressed their disdain for the fraud guideline: "[I]t is difficult for a sentencing judge to place much stock in a guidelines range that does not provide realistic guidance." *United States v. Parris*, 573 F. Supp. 2d 744, 751 (E.D.N.Y. 2008) (Block, J.); *see also United States v. Watt*, 707 F. Supp. 2d 149, 151 (D. Mass. 2010) (Gertner, J.) (stating that the "Guidelines were of no help"); *Corsey*, 723 F.3d at 379 (Underhill, J., concurring) ("the loss guideline . . . was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices" and as a result, "district judges can and

should exercise their discretion when deciding whether or not to follow the sentencing advice that guideline provides"); Alan Ellis, et al., *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 CRIM. JUST. 34, 40 (2011) ("As it stands, the fraud guideline constitutes a series of ad hoc amendments covering a vast array of distinctly dissimilar conduct applying to offenders from the Gordon Gecko variety to the well-intentioned but desperate business owners. There simply is no way the sentences that result from them can be considered principled or even reasonable.").

The Court should not adhere to the advisory sentencing range prescribed by the fraud guideline in this case. Instead, in crafting its sentence, the Court should rely mainly on the sentencing factors enumerated in 18 U.S.C. § 3553(a).

**B.      Mr. Minutolo's lack of any criminal history supports a downward variance.**

Mr. Minutolo is 39 years old and has no criminal history. He has no prior adult or juvenile convictions. Thus, the experience of being charged, prosecuted, and convicted of two federal felony offenses has served to deter and punish him significantly. Moreover, the impact of a federal criminal conviction, which Mr. Minutolo will carry with him for the rest of his life, cannot be overstated. Mr. Minutolo's lack of criminal history is relevant to determining the appropriate sentence in at least two ways: (1) in relation to the concept of incremental punishment; and (2) because as a first-time offender, he will be severely punished by the collateral consequences of a felony conviction.

1.      The concept of incremental punishment justifies a below-Guidelines sentence.

First, the fact that Mr. Minutolo has never served a prior sentence suggests that a Guidelines sentence would be disproportionate. In *United States v. Mishoe*, the Court of Appeals stated:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences . . . for the prior offenses.

241 F.3d 214, 220 (2d Cir. 2001) (Newman, J.). While the *Mishoe* decision principally addressed the Career Offender Guidelines, the teaching of that decision applies here. Where an individual has never been incarcerated prior to the instant offense, as is the case here, a sentence within the Guidelines imprisonment range would be excessively severe. That is because there is no reason to believe in such an instance that a prolonged period of incarceration (*e.g.*, a Guidelines prison sentence of 21 months or more) would be more effective than a lesser sentence, because there is no point of comparison or historical example to disprove the efficacy of a lower sentence.

      2.    <u>The Court should consider the collateral consequences of a felony conviction.</u>

Mr. Minutolo is a first-time offender. While he has other charges pending, they will not necessarily result in a felony conviction, or in any conviction at all. Mr. Minutolo faces a more severe penalty than other defendants, because, in addition to a prison sentence, he is experiencing for the first time the extremely serious collateral consequences of a felony conviction. A sentencing court should consider such collateral consequences before imposing a sentence. *See United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) (Sack, J.) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.").

Senior District Judge Block in the Eastern District of New York departed substantially below the Guidelines range in the case of a defendant convicted of importing 602 grams of cocaine. He noted that because this was their first felony conviction, it would bring with it a myriad of collateral consequences, the effect of which would be "devastating." *United States v. Nesbeth*, 188 F. Supp. 3d 179, 180 (E.D.N.Y. 2016). Judge Block added, "As Professor Michelle Alexander has explained, myriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civil death' and send the unequivocal message that 'they' are no longer part of

'us.'" *Ibid*. (internal citations and quotation marks omitted) (noting "nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons"). A felony conviction will, among other consequences, impact Mr. Minutolo's rights, his reputation, his employment and housing prospects, and his sense of himself for the rest of his life.

For Mr. Minutolo, the lifetime prohibition on ever possessing a firearm is an especially onerous consequence of his felony conviction. Prior to this conviction, recreational hunting and shooting was both a pastime and a passion for Mr. Minutolo. *See* PSR ¶¶ 5, 66. During his presentence interview, Mr. Minutolo described the "copious amounts of time" that he spent "hunting deer" with his grandfather as his "best childhood memory." *See id.* ¶ 66. Turning 21 was a milestone for Mr. Minutolo, because he was finally old enough to become a lawful pistol permit holder and make his grandfather proud. Mr. Minutolo was such a firearms enthusiast that he has the text of the Second Amendment to the U.S. Constitution tattooed on his right arm. *See id.* ¶ 71.[1] In the days leading up to his waiver of indictment and guilty plea, Mr. Minutolo surrendered all his firearms. *See id.* ¶ 5. Due to his felony conviction, Mr. Minutolo will never be able to participate in recreational hunting or shooting with family and friends, visit the shooting range, or pass down the traditions that his grandfather shared with him. He will never be able to even touch a firearm again without committing another federal felony offense. This loss has weighed heavily on him, and is a daily reminder of how his short-sighted decisions yielded consequences that he can never undo.

### C. The 18 U.S.C. § 3553(a) factors support a below-guidelines sentence.

The Court must impose a sentence that is "sufficient, but not greater than necessary" to

---

[1] "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST., amend. II.

achieve the purposes of sentencing. 18 U.S.C. § 3553(a). The defense respectfully submits that a prison sentence of 12 months and one day is sufficient to meet the purposes of sentencing in this case, particularly when compared to sentences imposed in fraud cases involving similar or much greater loss amounts in the District of Connecticut and nationwide.

     1.   <u>The need for the sentence to achieve just punishment, reflect the seriousness of the offense, and promote respect for the law.</u>

The offense in this case, though non-violent, was serious. Mr. Minutolo stole money from pandemic-era government relief programs that were critical to keep people employed and businesses afloat during an unprecedented public health crisis. Mr. Minutolo owes a considerable (but not insurmountable) amount of restitution that it will take him at least several years to pay back. He fully acknowledges the seriousness of his offense and does not seek to minimize it.

Notably, however, Mr. Minutolo has already been punished severely in a myriad of ways as a result of his actions. He incurred a federal felony conviction which will follow him for the rest of his life. An avid sportsman, he will most likely never be able to touch a firearm again. He considerably limited his options for the future, including for a future career. He disappointed his family and friends and destroyed his reputation. *See, e.g.*, Nov. 13, 2025 Sentencing Hearing Transcript at 73, *United States v. Gaston*, No. 3:25-CR-108 (SFR), ECF No. 32 (D. Conn. Nov. 20, 2025) (Russell, J.) (in imposing probation sentence for $1.1 million PPP/EIDL fraud, where the defendant had a prior state Medicaid fraud conviction, noting that "the nature of this prosecution, of course, has been quite public and I think that's no doubt impacted your standing in the community," which "itself . . . serves as a form of punishment and also has a deterrent impact as I don't think you will want to put yourself in this situation again").

The past year has been a time of reckoning for Mr. Minutolo, focused specifically on

recognizing and reflecting on the seriousness of his offense. The past year has also promoted his respect for the law, specifically through his compliance while on presentencing release for 9 ½ months.

A below-Guidelines sentence would better serve the goal of just punishment than a Guidelines sentence because it would return Mr. Minutolo to the community after a reasonable period of incarceration (his first and hopefully last), so that he can establish a new career before he is much older, and work toward earning money to pay restitution and make the victims whole.

2. The need for general and specific deterrence.

Imposing a prison sentence within the Guidelines range would not serve the goal of general deterrence, because it is not clear that the severity of a sentence—as distinct from the certainty of its imposition—has any significant general deterrent value. *See* Gary Kleck et al., *The Missing Link in General Deterrence Research*, 43 CRIMINOLOGY 623 (2005). For example, one study of defendants sentenced in the District of Columbia tracked over a thousand defendants whose sentences varied substantially in terms of prison and probation time. The study's authors found that "incarceration seems to have little net effect on the likelihood of subsequent rearrest." *See* Donald P. Green & Daniel Winik, *Using Random Judge Assignments To Estimate the Effects of Incarceration and Probation on Recidivism Among Drug Offenders*, 48 CRIMINOLOGY 357, 381 (2010). *See also United States v. Bannister*, 786 F. Supp. 2d 617, 658 (E.D.N.Y. 2011) (Weinstein, J.) ("[T]here is little apparent correlation between recidivism and the length of imprisonment.").

Mr. Minutolo fully acknowledges that he committed a serious federal offense that has and will continue to result in life-changing consequences. Given his lack of criminal history, his age (nearly 40), his education history (high school graduate with some college), and his track record while on bond, Mr. Minutolo presents a low risk of recidivism. The best way to achieve specific deterrence in this case is to provide for Mr. Minutolo's return to the community after a reasonable period of time,

so that he can resume employment and pay his debt to the victims and to society.

As for general deterrence, "[d]eterrence theory assumes the existence of a set of circumstances that do not exist," particularly "a level of civic knowledge and awareness – that everybody knows what the consequences are for a given crime." *See* DANIELLE SERED, UNTIL WE RECKON 61 (2019). The public already knows that, in general, people who commit financial crimes can be arrested, convicted, and sentenced to time in prison. And the public does not have the attention or interest to learn or retain minutiae such as the sentence received for a particular defendant. "As a culture, we simply do not possess that level of knowledge or awareness." *See ibid.* The theory of "general deterrence" ignores the basic fact that not many people other than federal criminal court practitioners, and the occasional federal criminal defendant with internet access, take the trouble to regularly check U.S. Department of Justice press releases to learn what sentences are imposed in federal criminal cases. "Nor do people typically learn about their peers' or neighbors' sentences with enough context to anticipate the consequences of their own actions." *See ibid.* While there may be exceptions for cases of extraordinary public interest, this is not such a case.

3.    <u>The need to protect the public.</u>

The goal of protecting the public from further crimes of the defendant goes hand in hand with the goal of specific deterrence, discussed above. As long as Mr. Minutolo is deterred from committing further crimes, there is no risk to the public. Significantly, Mr. Minutolo will continue to be deterred, and the public will continue to be protected, during the anticipated term of supervised release.

4.    <u>The need to prevent unwarranted sentencing disparities.</u>

A significantly below-Guidelines sentence in this case would not create "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The JSIN data in the Presentence Report indicates that the median

length of imprisonment for individuals with Mr. Minutolo's primary guideline, offense level, and criminal history category is 12 months, below the Guidelines range, which suggests that the Guidelines are not necessarily a useful benchmark in the "average" first-time offender fraud case. *See* PSR ¶ 104. A prison sentence of 12 months and one day would not only be an average sentence nationwide, but would also be a significantly longer than average sentence for this District and Circuit.

The requested sentence is also in accord with sentences imposed in recent Connecticut federal fraud cases involving similar or greater loss amounts. In this case, the agreed-upon intended loss is $290,765, and the actual loss after banks clawed back certain funds is $244,612. *See id.* ¶¶ 32, 109. Mr. Minutolo has agreed to pay $244,612 in restitution. *See id.* ¶ 120. A review of recent federal fraud sentences imposed in the District of Connecticut suggests that the requested sentence is an appropriate resolution for a fraud case involving approximately a quarter-million dollars. *Compare, e.g.:*

- Judgment, *United States v. Squillante*, No. 3:25-CR-106 (VDO), ECF No. 40 (D. Conn. Oct. 7, 2025) (Oliver, J.) (**60-day** sentence for **$220,912** insider trading scheme where defendant illegally traded 15 times, stealing material nonpublic information from 13 different companies, with fine of $331,368, where Guidelines imprisonment range was either 12 to 18 months or 18 to 24 months depending on how the Court resolved disputed abuse of position of trust enhancement);

- Judgment, *United States v. Bethea*, No. 3:22-CR-188 (KAD), ECF No. 96 (D. Conn. Mar. 6, 2025) (Dooley, J.) (**time served** sentence for payroll fraud scheme and separate check fraud scheme that victimized an elderly retired woman, with restitution order of **$434,212.55** (joint and several liability), where Guidelines imprisonment range was 21 to 27 months);

- Judgment, *United States v. Ivy*, No. 3:22-CR-196 (KAD), ECF No. 113 (D. Conn. Oct. 3, 2024) (Dooley, J.) (**time served** sentence for check fraud scheme that victimized an elderly retired woman, with restitution order of **$248,423.09** (joint and several liability), where Guidelines imprisonment range was 33 to 41 months);

- Judgment, *United States v. Coleman*, No. 3:24-CR-36 (KAD), ECF No. 83 (D. Conn. Aug. 19, 2024) (Dooley, J.) (**3-month** sentence for check fraud scheme that victimized an elderly retired woman, with restitution order of **$248,423.09** (joint and several liability), where Guidelines imprisonment range was 21 to 27 months);

14

- Judgment, *United States v. Hatch*, No. 3:23-CR-141 (SVN), ECF No. 117 (D. Conn. Apr. 18, 2024) (Nagala, J.) (**14-month** sentence for art fraud scheme, with restitution order of **$248,600**, where Guidelines imprisonment range was 21 to 27 months);

- Judgment, *United States v. Yankana*, No. 3:22-CR-172 (AWT), ECF No. 34 (D. Conn. Sept. 27, 2023) (Thompson, J.) (**5-month** sentence for stealing from Amazon, with restitution order of **$210,836.97**, where Guidelines imprisonment range was 15 to 21 months);

- Judgment, *United States v. Rankin*, No. 3:18-CR-272 (JAM), ECF No. 690 (D. Conn. May 24, 2023) (Meyer, J.) (**12-month** sentence for Connecticut Municipal Electric Energy Cooperative (CMEEC) Chief Executive Officer who used ratepayer money to pay for lavish trips to the Kentucky Derby and the Greenbrier Resort, where the Court apportioned liability and ordered restitution as to this defendant in the amount of **$374,400.31**, where the government argued that the Guidelines imprisonment range was 41 to 51 months);

- Judgment, *United States v. Sullivan*, No. 3:18-CR-272 (JAM), ECF No. 691 (D. Conn. May 24, 2023) (Meyer, J.) (**6-month** sentence for CMEEC board member who used ratepayer money to pay for lavish trips to the Kentucky Derby and the Greenbrier Resort, where the Court apportioned liability and ordered restitution as to this defendant in the amount of **$187,200.16**, where the government argued that the Guidelines imprisonment range was 33 to 41 months);

- Judgment, *United States v. Bilda*, No. 3:18-CR-272 (JAM), ECF No. 692 (D. Conn. May 24, 2023) (Meyer, J.) (**6-month** sentence for CMEEC board member who used ratepayer money to pay for lavish trips to the Kentucky Derby and the Greenbrier Resort, where the Court apportioned liability and ordered restitution as to this defendant in the amount of **$187,200.16**, where the government argued that the Guidelines imprisonment range was 41 to 51 months);

- Judgment, *United States v. Kalinowski*, No. 3:22-CR-234 (VLB), ECF No. 41 (D. Conn. May 2, 2023) (Bryant, J.) (**7-month** sentence for tax fraud scheme, with restitution order of **$174,746**, where Guidelines imprisonment range was 12 to 18 months);

- Judgment, *United States v. Aucapina*, No. 3:21-CR-113 (JBA), ECF No. 242 (D. Conn. Apr. 5, 2023) (Arterton, J.) (**5-month** sentence for tax fraud scheme, with restitution order of **$177,589**, where Guidelines imprisonment range was 27 to 33 months);

- Judgment, *United States v. Gutierrez*, No. 3:21-CR-113 (JBA), ECF No. 236 (D. Conn. Mar. 30, 2023) (Arterton, J.) (**6-month** sentence for tax fraud scheme, with restitution order of **$215,460.72**, where Guidelines imprisonment range was 12 to 18 months);

- Judgment, *United States v. Chaudhary*, No. 3:20-CR-113 (JCH), ECF No. 77 (D. Conn. Nov. 18, 2022) (Hall, J.) (**probation** sentence for food stamp fraud conspiracy, with restitution order of **$211,208** (joint and several liability), where Guidelines imprisonment range was 12 to 18 months);

- Judgment, *United States v. Khan*, No. 3:20-CR-108 (JCH), ECF No. 83 (D. Conn. Nov. 16, 2022) (Hall, J.) (**probation** sentence for food stamp conspiracy, with restitution order of **$211,208** (joint and several liability), where Guidelines imprisonment range was 12 to 18 months);

- Judgment, *United States v. Javed Saeed*, No. 3:21-CR-155 (JCH), ECF No. 91 (D. Conn. Nov. 10, 2022) (Hall, J.) (**1 year and 1 day** sentence for food stamp fraud conspiracy, with restitution order of **$211,208** (joint and several liability), where Guidelines imprisonment range was 21 to 27 months);

- Judgment, *United States v. Dastgir Saeed*, No. 3:21-CR-155 (JCH), ECF No. 88 (D. Conn. Nov. 10, 2022) (Hall, J.) (**2-month** sentence for food stamp fraud conspiracy, with restitution order of **$211,208** (joint and several liability), where Guidelines imprisonment range was 12 to 18 months);

- Judgment, *United States v. Richards*, No. 3:22-CR-72 (KAD), ECF No. 81 (D. Conn. Sept. 19, 2022) (Dooley, J.) (**3-month** sentence where project manager defrauded his employer, with restitution order of **$396,966**, where Guidelines imprisonment range was 21 to 27 months);

- Judgment, *United States v. Klatt*, No. 3:21-CR-217 (JCH), ECF No. 26 (D. Conn. Apr. 21, 2022) (Hall, J.) (**1 year and 1 day** sentence where property management company office manager stole from their employer, with restitution order of **$446,859.82**, where Guidelines imprisonment range was 33 to 41 months);

- Judgment, *United States v. Miller*, No. 3:19-CR-40 (KAD), ECF No. 73 (D. Conn. Sept. 10, 2020) (Dooley, J.) (**6-month** sentence where bookkeeper at property management and development company embezzled from their employer, with restitution order of **$413,180**, where Guidelines imprisonment range was 27 to 33 months);

- Judgment, *United States v. Sherman*, No. 3:19-CR-256 (MPS), ECF No. 56 (D. Conn. Aug. 17, 2020) (Shea, C.J.) (**8-month** sentence where bookkeeper embezzled from their clients and defrauded the IRS, with restitution order of **$377,444.09**, where Guidelines imprisonment range was 30 to 37 months); and

- Judgment, *United States v. Buchanan*, No. 3:20-CR-52 (JBA), ECF No. 24 (D. Conn. July 23, 2020) (Arterton, J.) (**1 year and 1 day** sentence where payroll manager defrauded their employer, with restitution order of **$260,202.52**, where Guidelines imprisonment range was 30 to 37 months).[2]

In Mr. Minutolo's case, a sentence within or near the Guidelines imprisonment range would be excessive and create unwarranted sentencing disparities. A 21-month sentence for Mr. Minutolo's theft of less than $250,000 would be harsher than necessary to serve the purposes of sentencing given recent sentences imposed in Connecticut fraud cases involving much more significant loss amounts. For example, last week Judge Russell sentenced Karen Gaston, who fraudulently obtained over *$1 million* in PPP and Economic Injury Disaster Loan (EIDL) funds and had a prior state Medicaid fraud conviction, to probation. *See* Judgment, *United States v. Gaston*, No. 3:25-CR-108 (SFR), ECF No. 31 (D. Conn. Nov. 17, 2025) (Russell, J.) (where Guidelines imprisonment range was 37–46 months, imposing sentence of **3 years' probation** with conditions including four weekends of intermittent confinement, followed by 10 months of home detention with location monitoring, with restitution order of **$1,163,910**). Ms. Gaston "applied for seven separate loans over the course of multiple months stretching into 2021, filing false applications, lying about the number of employees on [her] payroll, using aliases and pseudonyms and even putting the name of a family member on the fraudulent applicants." *See* Nov. 13, 2025 Sentencing Hearing Transcript at 66–67, *United States v. Gaston*, No. 3:25-CR-108 (SFR), ECF No. 32 (D. Conn. Nov. 20, 2025).

---

[2] *But cf.* Judgment, *United States v. Matava*, No. 3:23-CR-156 (KAD), ECF No. 139 (D. Conn. Apr. 3, 2024) (Dooley, J.) (24-month sentence in PPP loan fraud case with intended loss of $200,000 and actual loss of $100,000, where Guidelines imprisonment range was 21 to 27 months, where defendant took a week-long Carnival cruise to Bermuda while on pretrial release).

Like Mr. Minutolo, Ms. Gaston spent some of the money "helping others and some investing in the business that [she was] trying to get off of the ground." *See ibid.* However, unlike Mr. Minutolo, Ms. Gaston spent much of the money on two Mini Coopers, a Toyota, a $40,000 diamond ring from Harry Winston, another $30,000 in jewelry from Tiffany & Co., $14,000 at Macy's and Nordstrom, $13,000 at Jimmy Choo, $10,000 at Crate & Barrell, $6,000 at All Pets Clubs, $4,500 at California Closets, $3,400 at Louis Vuitton $1,600 at The Capital Grille, $1,500 at Fleming's Prime Steakhouse and Wine Bar, $1,200 at Ruth's Chris Steakhouse, $1,100 at Victoria's Secret, and $1,000 at Kate Spade. *See id.* at 40.

For other examples of recent sentencing outcomes in Connecticut federal fraud cases involving significantly greater loss amounts suggesting that a Guidelines sentence for Mr. Minutolo would create unwarranted disparities, *see, e.g.*:

- Judgment, *United States v. Khokhar*, No. 3:24-CR-109 (SVN), ECF No. 55 (D. Conn. Nov. 18, 2025) (Nagala, J.) (**20-month** sentence for tobacco tax fraud scheme, with restitution order of **$1,140,994.13**, where Guidelines imprisonment range was 30 to 37 months);

- Judgment, *United States v. Mingione*, No. 3:25-CR-65 (AWT), ECF No. 38 (D. Conn. Aug. 27, 2025) (Thompson, J.) (**time served** sentence where defendant embezzled millions from various real estate businesses he was entrusted to manage, with restitution order of **$2,958,203**, where Guidelines imprisonment range was 30 to 37 months);

- Judgment, *United States v. Epps*, No. 3:24-CR-203 (KAD), ECF No. 25 (D. Conn. Feb. 7, 2025) (Dooley, J.) (**27-month** sentence for Medicaid fraud scheme, with restitution order of **$1,001,508.43**, where Guidelines imprisonment range after *Fernandez* departure was 30 to 37 months);

- Judgment, *United States v. Keating*, No. 3:24-CR-12 (VAB), ECF No. 42 (D. Conn. Feb. 3, 2025) (Bolden, J.) (**20-month** sentence where defendant defrauded his employer, with restitution order of **$1,226,603.97**, where Guidelines imprisonment range was 41 to 51 months);

18

- Judgment, *United States v. Bethi*, No. 3:24-CR-175 (VAB), ECF No. 24 (D. Conn. Jan. 10, 2025) (Bolden, J.) (**probation** sentence where defendant, a dentist, received over **$2.2 million** in Medicaid payments for patients incentivized by kickbacks and agreed to disgorge **$500,000** in forfeiture, where Guidelines imprisonment range was 37 to 46 months);

- Judgment, *United States v. Bobzin*, No. 3:24-CR-169 (KAD), ECF No. 23 (D. Conn. Nov. 26, 2024) (Dooley, J.) (**24-month** sentence where defendant stole over two million dollars from his employer and failed to accurately report the stolen monies in yearly tax filings over eight years, with restitution order of **$2,498,758**, where Guidelines imprisonment range was 30 to 37 months);

- Judgment, *United States v. Gilson*, No. 3:24-CR-127 (VDO), ECF No. 32 (D. Conn. Oct. 11, 2024) (Oliver, J.) (**19-month** sentence for tax scheme including $250,000 PPP loan fraud, with restitution order of **$1,407,831.16**, where Guidelines imprisonment range was 18 to 24 months);

- Judgment, *United States v. Biebel*, No. 3:24-CR-94 (KAD), ECF No. 35 (D. Conn. Oct. 1, 2024) (Dooley, J.) (**18-month** sentence for tax fraud scheme, with restitution order of **$1,208,801.23**, where Guidelines imprisonment range was 24 to 30 months);

- Judgment, *United States v. Glenn*, No. 3:23-CR-171 (RNC), ECF No. 42 (D. Conn. Sept. 17, 2024) (Chatigny, J.) (**21-month** sentence for "cherry-picking" securities scheme where defendant was an investment advisor, with restitution order of **$2,743,616**, where Guidelines imprisonment range was 51 to 63 months);

- Judgment, *United States v. Slocum*, No. 3:23-CR-137 (SRU), ECF No. 46 (D. Conn. July 17, 2024) (Underhill, J.) (**probation** sentence for Medicaid fraud case, where defendant was a licensed professional counselor, with restitution order of **$695,048**, where Guidelines imprisonment range was 30 to 37 months);

- Judgment, *United States v. Pines*, No. 3:24-CR-14 (SVN), ECF No. 35 (D. Conn. May 14, 2024) (Nagala, J.) (**27-month** sentence for Medicaid fraud scheme, with restitution order of **$1,617,679**, where Guidelines imprisonment range was 37 to 46 months);

- Judgment, *United States v. Sullivan*, No. 3:23-CR-188 (KAD), ECF No. 36 (D. Conn. Feb. 23, 2024) (Dooley, J.) (**24-month** sentence where office manager of a family-owned business defrauded their employer, with restitution order of **$1,172,989.71**, where Guidelines imprisonment range was 27 to 33 months);

- Judgment, *United States v. Lonski*, No. 3:22-CR-227 (SVN), ECF No. 57 (D. Conn. Dec. 20, 2023) (Nagala, J.) (**27-month** sentence for six-year Medicare, Medicaid, and private insurance fraud scheme, with restitution order of **$2,651,294**, where Guidelines imprisonment range was 37 to 46 months);

- Judgment, *United States v. Stewart*, No. 3:22-CR-26 (AWT), ECF No. 41 (D. Conn. Sept. 29, 2023) (Thompson, J.) (**9-month** sentence for stealing from Amazon, with restitution order of **$1,063,762.83**, where Guidelines imprisonment range was 27 to 33 months);

- Judgment, *United States v. Pezzolo*, No. 3:23-CR-4 (VAB), ECF No. 23 (D. Conn. June 27, 2023) (Bolden, J.) (**13-month** sentence where office manager and bookkeeper at nursery embezzled from their employer and failed to file a personal tax return or pay the income tax to the IRS for four years, with restitution amount of **$1,329,314**, where Guidelines imprisonment range after *Fernandez* departure was 24 to 30 months);

- Judgment, *United States v. Guerreno*, No. 3:22-CR-181 (MPS), ECF No. 38 (D. Conn. Feb. 14, 2023) (Shea, C.J.) (**24-month** sentence where Chief Financial Officer of financial services company diverted funds from the comapny, with restitution order of **$1,073,473.57**, where Guidelines imprisonment range was 41 to 51 months);

- Judgment, *United States v. Chen*, No. 3:22-CR-143 (SRU), ECF No. 45 (D. Conn. Jan. 10, 2023) (Underhill, J.) (**18-month** sentence where defendant "zapped" cash transactions at six restaurants for nearly a decade, resulting in over **$2 million** in losses on payroll-related taxes, with restitution order of **$600,000**, where Guidelines imprisonment range was 37 to 46 months);

- Judgment, *United States v. Fitzgerald-Williams*, No. 3:22-CR-73 (VAB), ECF No. 45 (D. Conn. Dec. 8, 2022) (Bolden, J.) (**30-day** sentence in bank fraud case where defendant abused his position of trust as a bank employee, with restitution order of **$780,922.77**, where Guidelines imprisonment range after *Fernandez* departure was 63 to 78 months);

- Judgment, *United States v. Kania*, No. 3:21-CR-194 (VAB), ECF No. 41 (D. Conn. Nov. 18, 2022) (Bolden, J.) (**60-day** sentence where defendant fraudulently obtained funds from State of Connecticut Department of Labor (CTDOL) programs that provided wage and training subsidies to employers that hire unemployed jobseekers, including veterans, with restitution order of **$1,054,722.22**, where Guidelines imprisonment range was 27 to 33 months);

- Judgment, *United States v. Gardner*, No. 3:21-CR-90 (VAB), ECF No. 33 (D. Conn. Nov. 16, 2021) (Bolden, J.) (**8-month** sentence where defendant abused their position as the site manager of low-income government-subsidized elderly and disabled housing complexes to embezzle from their employer, with restitution order of **$501,656.17**, where Guidelines imprisonment range was 24 to 30 months);

- Judgment, *United States v. Meole*, No. 3:20-CR-114 (VAB), ECF No. 77 (D. Conn. July 13, 2021) (Bolden, J.) (**probation** sentence for multiple fraud schemes over four years, with restitution amount of **$559,811.56**, where Guidelines imprisonment range was 41 to 51 months);

- Judgment, *United States v. White*, No. 3:18-CR-249 (AWT), ECF No. 47 (D. Conn. Mar. 5, 2021) (Thompson, J.) (**13-month** sentence for vital participant in health care fraud scheme, with restitution order of **$27,616,662** (joint and several liability), where Guidelines imprisonment range was 57 to 71 months);

- Judgment, *United States v. Huitzil*, No. 3:20-CR-21 (KAD), ECF No. 39 (D. Conn. Aug. 31, 2020) (Dooley, J.) (**6-month** sentence where defendant, a tax return preparer, had a multi-year practice of preparing and filing false returns, with restitution order of **$898,665**, where Guidelines imprisonment range was 30 to 36 months);

- Judgment, *United States v. Gyambibi*, No. 3:18-CR-136 (JAM), ECF No. 169 (D. Conn. Feb. 20, 2020) (Meyer, J.) (**12-month** sentence where defendant was convicted at trial for health care fraud scheme, where the Court apportioned liability and ordered restitution as to this defendant in the amount of **$825,166.12**, where Guidelines imprisonment range was 51 to 63 months); and

- Judgment, *United States v. Foreman*, No. 3:19-CR-62 (VAB), ECF No. 46 (D. Conn. Jan. 28, 2020) (Bolden, J.) (**1 year and 1 day** sentence for years-long fraud and tax scheme, with restitution order of **$640,209.46**, where the Guidelines imprisonment range was 37 to 46 months).

Overall, precedent in this District and nationwide averages available in the U.S. Sentencing Commission's JSIN database suggest that the requested sentence of 12 months and one day would avoid unwarranted sentencing disparities, and that a sentence within the Guidelines imprisonment range of 21 to 27 months would create unwarranted disparities, for this offense involving an actual loss of less than $250,000.

     5.    <u>The need to provide training, medical care, or treatment in the most effective manner.</u>

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." This purpose militates strongly against a lengthy prison sentence. Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

Mr. Minutolo will receive rehabilitation while on supervised release. The Court can impose conditions including educational and vocational goals, financial restrictions, community service, and cognitive behavioral therapy, among others. Mr. Minutolo will have many tools to succeed on supervised release, including the support of the U.S. Probation Office, the Federal Defender Office, and this Court. Incarceration will not provide him with rehabilitation, but will only interrupt his efforts at rehabilitation while on presentencing release and delay future efforts at rehabilitation while on supervised release.

6. The need to provide restitution to victims.

Mr. Minutolo has agreed to repay $244,612 in restitution. *See* PSR ¶ 120. Because he does not have any assets to speak of, Mr. Minutolo expects that he will be making restitution payments in this case for at least several years. As long as he is incarcerated, he will not be able to make restitution payments. Accordingly, the sentencing goal of providing restitution would be best served by a sentence that returns Mr. Minutolo to the community after a reasonable period of time so that he can resume employment and make restitution payments.

## IV. Conclusion

Mr. Minutolo respectfully requests that the Court impose a non-Guidelines prison sentence of 12 months and one day.

Respectfully Submitted,

THE DEFENDANT,

Vincenzo Minutolo

OFFICE OF THE FEDERAL DEFENDER

Date:  November 26, 2025

*/s/Andrew P. Giering*
Andrew P. Giering
Assistant Federal Defender
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4200
Fax: (203) 498-4207
Bar no.: ct29332
Email: Andrew_Giering@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 26, 2025, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/Andrew P. Giering*
Andrew P. Giering